Joseph R. Saveri (State Bar No. 130064)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery, Suite 1210
San Francisco, CA 94111
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com

Vincent J. Esades
James W. Anderson
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: vesades@heinsmills.com
          janderson@heinsmills.com

*Attorneys for Plaintiff and the Proposed Class*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON GAINES,<br><br>        Plaintiff, and on behalf of all<br>                others similarly-situated,<br><br>v.<br><br>FIAT CHRYSLER AUTOMOBILES N.V. and<br>FCA US LLC,<br><br>                              Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

## I.      INTRODUCTION

Plaintiff Jason Gaines ("Plaintiff"), individually and on behalf of all others similarly situated ("Class members"), alleges the following against Fiat Chrysler Automobiles N.V. ("FCA NV.") and FCA US LLC ("FCA US") (collectively, "Defendants"), based where applicable on personal knowledge, information and belief, and the investigation of counsel.

## II.    NATURE OF THE ACTION

1.    This nationwide class action concerns the intentional installation of so-called defeat devices on an estimated 104,000 diesel Dodge and Jeep vehicles sold in the United States since 2014 ("Defeat Device Vehicles"). Defendants marketed those vehicles as environmentally friendly vehicles that possessed better fuel efficiency, better performance, and lower emissions. Although Defendants successfully marketed these expensive cars as "clean," their environmentally-friendly representations were a sham. Defendants did not actually make cars with those desirable and advertised attributes.

2.    According to the U.S. Environmental Protection Agency ("EPA"), Defendants installed their "defeat device" in at least their 3.0-liter EcoDiesel-powered 2014-2016 Dodge RAM 1500 pickup trucks and 2014-2016 Jeep Grand Cherokee sport utility vehicles.

3.    Instead of delivering on their promise of superior fuel economy coupled with low emissions, Defendants devised a way to make it appear that their cars did what they said they would when, in fact, they did not.

4.    The defeat devices Defendants designed and installed work by switching on the full emissions control systems in Defendants' cars only when the car is undergoing periodic emissions testing. The technology needed to control emissions from Defendants' cars to meet state and federal emissions regulations, reduces their performance, limiting acceleration, torque, and fuel efficiency.

5.    To hide this, the defeat device simply shuts off most of the emissions control systems in the car once the car has completed its emissions test. While that might have made the car more fun to drive, it resulted in Defendants' cars sending excess NOx emissions into the environment than is allowed under the Clean Air Act and state regulations.

6.    Those violations are explained in a Notice of Violation the EPA issued to Defendants.

## III.    PARTIES

Plaintiff Jason Gaines is an adult resident of Minneapolis, Minnesota, located in Hennepin County.

7.    Fiat Chrysler Automobiles N.V., a Dutch corporation headquartered in London, United Kingdom, is an international automotive group engaged in designing, engineering, manufacturing, distributing, and selling vehicles, components, and production systems. FCA N.V. vehicles are

produced for mass market under the Abarth, Alfa Romeo, Chrysler, Dodge, Fiat, Fiat Professional, Jeep, Lancia, and RAM brands and the SRT performance vehicle designation.

8.      FCA N.V. sells vehicles in the United States through its subsidiary FCA US LLC.

9.      FCA US LLC is a corporation doing business in every U.S. state and the District of Columbia, and is organized under the laws of Delaware, with its principal place of business at 1000 Chrysler Drive, Auburn Hills, Michigan 48326. FCA US is therefore a citizen of Delaware and Michigan. *See* 28 U.S.C. § 1332(d)(10).

10.      At all relevant times, FCA US manufactured, distributed, sold, leased, and warranted the Defeat Device Vehicles under the Dodge and Jeep brand names throughout the United States. FCA US and/or its agents designed the EcoDiesel engines and engine control systems in the Defeat Device Vehicles, including the "defeat device." FCA US also developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Defeat Device Vehicles.

## IV.      ANY OTHERWISE-APPLICABLE STATUTES OF LIMITATION ARE TOLLED

11.      The tolling doctrine was made for cases of concealment like this one. For the following reasons, any otherwise-applicable statutes of limitation have been tolled by the discovery rule with respect to all claims.

12.      Through the exercise of reasonable diligence, and within any applicable statutes of limitation, Plaintiff and members of the proposed Class could not have discovered that Defendants were concealing and misrepresenting the true emissions levels of their vehicles, including but not limited to their use of defeat devices.

13.      As reported on January 12, 2017, the U.S. Environmental Protection Agency determined that Defendants failed to disclose eight (8) Auxiliary Emission Control Devices (AECDs) in approximately 103,828 vehicles. Due to the eight (8) undisclosed AECDs, the vehicles did not conform to the vehicles' specifications described in the applications for the respective vehicles' certificates for conformity (COCs). Therefore, Defendants violated section 203(a)(1) of the Clean Air act, 42 U.S.C. §7522(a)(1).

14.     The EPA determined that one or more of these eight AECDs resulted in excess NOx emissions than may reasonably be expected under normal vehicle operation. Despite being aware that the disclosure of these AECDs was required, Defendants did not disclose these AECDs to the EPA in their applications for COCs. Thus, Defendants' deception with respect to their EcoDiesel engines, engine control systems, and "defeat devices" was painstakingly concealed from consumers and regulators alike.

15.     Plaintiff and the other Class members could not reasonably discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendants intentionally failed to report information within their knowledge to federal and state authorities, their dealerships, or consumers.

16.     Likewise, a reasonable and diligent investigation could not have disclosed that Defendants had information in their sole possession about the existence of their sophisticated emissions deception and that they concealed that information, which was discovered by Plaintiff immediately before this action was filed. Plaintiff and other Class members could not have previously learned that Defendants valued profits over compliance with applicable federal and state emissions and consumer law.

17.     Throughout the relevant time period, all applicable statutes of limitation have been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged in this Complaint.

18.     Instead of disclosing their emissions deception, or that the emissions from the Defeat Device Vehicles were far worse than represented, Defendants falsely represented that their vehicles complied with federal and state emissions standards, and that they were a reputable manufacturer whose representations could be trusted.

19.     Defendants were under a continuous duty to disclose to Plaintiff and the other Class members the facts that they knew about the emissions from Defeat Device Vehicles, and of those vehicles' failure to comply with federal and state laws.

20.     Although they had the duty throughout the relevant period to disclose to Plaintiff and Class members that they had engaged in the deception described in this Complaint, Defendants chose

to evade federal and state emissions and clean air standards with respect to the Defeat Device Vehicles, and they intentionally misrepresented their blatant and deceptive lack of compliance with state law regulating vehicle emissions and clean air.

21.     Thus, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## V.     JURISDICTION AND VENUE

22.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which the Defendants are citizens of different jurisdictions from members of the proposed class, including Plaintiff.

23.     This Court has personal jurisdiction over Defendants because they conduct business in California, and have sufficient minimum contacts with California.

24.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendants have caused harm to Class members residing in this District.

## VI.    FACTS GIVING RISE TO CLAIMS FOR RELIEF

25.     Defendants intentionally designed and sold cars that misled consumers and regulators about the amount of pollution those cars created and the fuel efficiency they produced. Despite touting themselves as an environmentally conscientious company that produced thoughtful cars for people who cared about the environment, Defendants sold expensive cars that produced pollution at orders of a magnitude above federal and state regulations, and then intentionally and knowingly hid the truth about those cars.

### A.     Defendants Tout their Diesel Vehicles as Being Fuel Efficient and Good for the Environment

26.     For years, Defendants advertised their diesel vehicles as low-emission, fuel-efficient vehicles. Indeed, this marketing message is at the core of their image in the United States.



27.    Defendants' success is based in large part on promoting their diesel cars as "clean" and "environmentally friendly" vehicles. Indeed, being both highly efficient and "clean" are the centerpieces of Defendants' diesel engine marketing campaign. "EcoDiesel" is in the very name of the vehicles about which Defendants lied.[1]

We hope you enjoyed learning about the versatile 3.0L EcoDiesel V6 engine. It's a smart choice to help you save time and money, reduce $CO_2$ emissions and have the fuel efficiency, performance and capability to live without limits, tow without worry and be environmentally friendly.

29.    Defendants' apparent concern for the environment is evident beyond just the model names and purported attributes of their vehicles. For example, on the "Savings" page of their website, Defendants state "Did we mention low CO 2 emissions? Could this be the perfect engine?"[2]

**ECODIESEL**

# RAM 1500 HFE

The industry's only half-ton pickup with an available diesel engine ❶ boasts exceptional torque, reduced $CO_2$ emissions and delivers the best fuel economy of any full-size pickup❷. There's no wonder it's a legend.

1 http://www.jeep.com/en/jeep-capabilities/eco-diesel-calculator/#introduction (last accessed Feb. 15, 2017); http://www.ramtrucks.com/en/ecodiesel/ (last accessed Feb. 15, 2017).
2 http://www.jeep.com/en/jeep-capabilities/eco-diesel-calculator/#savings (last accessed Feb. 15, 2017).

30.    Unfortunately for consumers who bought Defendants' cars and for people who breathe the air into which Defendants' cars emit excessive amounts of pollutants, Defendants' engineering was far from "truthful." Defendants have designed and sold cars that emit pollutants, failing state and federal environmental regulations.



**EFFICIENCY**

The innovative Ram 3.0L EcoDiesel V6 engine began with a block of compacted graphite iron and aluminum twin-cam heads. Then we added advanced clean diesel technology, B20 biodiesel capability and standard Active Air® Grille Shutters. The Ram 1500 is the industry's only half-ton pickup with an available diesel engine❶. The Ram 1500 HFE model delivers the best fuel economy of any full-size pickup❷.

**B.    Defendants Intentionally Hid the Excessive and Illegal Levels of Pollution Emitted from Their Cars.**

31.    Contrary to Defendants' self-promotion as a "clean" company, their diesel vehicles are unhealthy and unlawful.

32.    On January 12, 2017, the EPA issued a Notice of Violation ("NOV"). The NOV explains that Defendants have installed sophisticated software in the Jeep and Dodge diesel vehicles sold by Defendants in the United States that reduces the effectiveness of the vehicles' emission control system that exist to comply with the CAA emission standards. This software produced and used by Defendants may be a "defeat device" as defined by the Clean Air Act.

33.    According to the EPA, Defendants failed to disclose eight (8) Auxiliary Emission Control Devices ("AECDs") in approximately 103,828 vehicles. Due the eight (8) undisclosed AECDs, the vehicles did not conform to the vehicles specifications described in the applications for the respective vehicles' certificates for conformity (COCs). Therefore, Defendants violated section 203(a)(1) of the Clean Air act, 42 U.S.C. §7522(a)(1).

34.    The EPA determined that one or more of these eight AECDs, alone or in combination, resulted in excess NOx emissions than may reasonably be expected under normal vehicle operation.

Despite being aware that the disclosure of these AECDs was required, Defendants did not disclose these AECDs to the EPA in their applications for COCs. Thus, Defendants' deception with respect to their EcoDiesel engines, engine control systems, and "defeat devices" was painstakingly concealed from consumers and regulators alike.

35.     The EPA NOV states:

> To date, despite having the opportunity to do so, [Defendants have] failed to demonstrate that [they] did not know, or should not have known, that a principal effect of one or more of these AECDs was to bypass, defeat, or render inoperative one or more elements of design installed to comply with emissions standards under the CAA.

36.     Most modern engines, including Defendants' "EcoDiesel" engines, use computerized engine control systems to monitor sensors throughout a car's engine and exhaust systems and control operation of the car's systems to ensure optimal performance and efficiency.

37.     These engine control computers also receive data from sensors in the car's exhaust system that measure the amounts of chemical substances included in the car's exhaust. That data provides a measure of the engine's operation and efficiency, and is thus used by the engine control computer in operating the car's systems to ensure the desired performance and efficiency.

38.     Defendants programmed the engine control computers in the Defeat Device Vehicles with software that detects when the cars are undergoing emissions testing, and then operates the car's engine and exhaust systems to ensure that emissions comply with EPA pollutant standards. When the car is not being emissions tested—that is, under the vast majority of operating conditions—the engine control systems operate the vehicle in a manner that does not comply with EPA emissions requirements.

39.     In short, this software allows Defendants' diesel vehicles to meet emissions standards in labs or state testing stations, while permitting the vehicles to emit nitrogen oxides (NOx) in excess of United States laws and regulations during the normal operation of the vehicles.

40.     NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or

cardiovascular-related effects. Children, the elderly, and people with preexisting respiratory illness are at an acute risk of health effects from these pollutants.

41.     The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA-issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified. By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions than were certified to the EPA, FCA US violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal laws.

**C.      FCA US's Illegal Actions Have Caused Class Members Significant Harm.**

42.     Purchasers of the Defeat Device Vehicles have and will continue to suffer significant harm. First, FCA US will not be able to make the Defeat Device Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency. As a result, even if Defendants are able to make Class members' Defeat Device Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised.

43.     Second, this will necessarily result in a diminution in value of every Defeat Device Vehicle. Not only did Class members pay too much for cars now worth substantially less, but they will end up paying more to fuel their less efficient cars over the years they own their vehicles.

44.     As a result of FCA US's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Defeat Device Vehicles emit excess emissions levels, owners and/or lessees of the Defeat Device Vehicles have suffered losses in money and/or property.

45.     Had Plaintiff and Class members known of the "defeat device" at the time they purchased or leased their Defeat Device Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did. Moreover, when and if Defendants recall the Defeat Device Vehicles and degrade the EcoDiesel engine performance in order to

make the Defeat Device Vehicles compliant with EPA standards, Plaintiff and Class members will be required to spend more on fuel and will not benefit from the performance qualities of their vehicles as advertised. Moreover, Defeat Device Vehicles will necessarily be worth less in the used marketplace because of their decrease in performance and efficiency, which means that owners of Defeat Device Vehicles will not be able to recoup nearly as much value in the future.

46.     Defendants' deliberate strategy to value profit over the truth, human health, and the environment, has caused serious harm to consumers nationwide.

## VII.   PLAINTIFF'S FACTS

47.     Plaintiff Jason Gaines purchased a 2015 Jeep Grand Cherokee equipped with the EcoDiesel engine.  The purchase was made at Park Chrysler Jeep in Burnsville, Minnesota.  Plaintiff Jason Gaines would not have paid a premium for his Jeep Grand Cherokee if he had known the truth about its fuel efficiency and emissions, and he would not have purchased its Jeep Grand Cherokee if he knew it included an unlawful defeat device.

## VIII.   CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Classes:

**Nationwide Class**:

All persons or entities in the United States who are current or former owners and/or lessees of, or that otherwise acquired, a "Defeat Device Vehicle."

Defeat Device Vehicles include, without limitation: 2014-2016 Jeep Grand Cherokee and 2014-2016 Dodge RAM 1500 or any other car that is powered by Defendants' 3.0-liter EcoDiesel engine.

**Minnesota Class**:

All persons or entities in the State of Minnesota who are current or former owners and/or lessees of, or that otherwise acquired, a "Defeat Device Vehicle."
Defeat Device Vehicles include, without limitation: 2014-2016 Jeep Grand Cherokee and 2014-2016 Dodge RAM 1500 or any other car that is powered by Defendants' 3.0-liter EcoDiesel engine.

49.     Excluded from the Class are individuals who have personal injury claims resulting from the "defeat device" in the EcoDiesel system. Also excluded from the Class are FCA N.V. and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

50.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

51.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

52.     <u>Numerosity</u>:  The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. However, the precise number of Class members is unknown to Plaintiff, but may be ascertained from Defendants' records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

53.     <u>Existence and predominance of common questions</u>:  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.     Whether Defendants engaged in the conduct alleged herein;

b.     Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed Defeat Device Vehicles into the stream of commerce in the United States;

c.     Whether the EcoDiesel engine system in the Defeat Device Vehicles contains a defect in that it does not comply with EPA requirements;

d.     Whether the EcoDiesel engine systems in Defeat Device Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Defeat Device Vehicles;

1        e.        Whether Defendants knew about the "defeat device" and, if so, how long

2  Defendants had known;

3        f.        Whether Defendants designed, manufactured, marketed, and distributed Defeat

4  Device Vehicles with a "defeat device";

5        g.        Whether Defendants' conduct violates the Magnuson-Moss Warranty Act;

6        h.        Whether Defendants' conduct violates the Minnesota statutes and laws as

7  asserted herein;

8        i.        Whether Plaintiff and the other Class members overpaid for their Defeat Device

9  Vehicles;

10        j.        Whether Plaintiff and the other Class members are entitled to equitable relief,

11  including, but not limited to, restitution or injunctive relief; and

12        k.        Whether Plaintiff and the other Class members are entitled to damages and other

13  monetary relief and, if so, in what amount.

14        54.   Typicality:  Plaintiff's claims are typical of the other Class members' claims because,

15  among other things, all Class members were comparably injured through Defendants' wrongful conduct

16  as described above.

17        55.   Adequacy:  Plaintiff is an adequate Class representative because his interests do not

18  conflict with the interests of the other members of the Class he seeks to represent; Plaintiff has retained

19  counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute

20  this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and his

21  counsel.

22        56.   Superiority:  A class action is superior to any other available means for the fair and

23  efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the

24  management of this class action. The damages or other financial detriment suffered by Plaintiff and the

25  other Class members are relatively small compared to the burden and expense that would be required to

26  individually litigate their claims against Defendants, so it would be impracticable for members of the

27  Class to individually seek redress for Defendants' wrongful conduct.

28

57.     Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court

58.     <u>Declaratory and Injunctive Relief</u>:  Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

## IX.     CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**(On Behalf of the U.S. Class)**
***(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq.)***

59.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

60.     Plaintiff asserts this cause of action on behalf of himself and the other members of the Class.

61.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 2301(3).

62.     Defendants' Defeat Device Vehicles are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

63.     Plaintiff and Class members are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

64.     Defendants are a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. § 2301(4) and (5).

65.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

66.     Defendants provided Plaintiff and Class members with "implied warranties," as that term is defined in 15 U.S.C. § 2301(7).

67.     Defendants have breached these implied warranties as described in more detail above. Without limitation, Defendants' Defeat Device vehicles are defective, as described above, which resulted in the problems and failures also described above.

68.     By Defendants' conduct as described herein, including Defendants' knowledge of the defects inherent in the vehicles and their action, and inaction, in the face of the knowledge, Defendants have failed to comply with their obligations under their written and implied promises, warranties, and representations.

69.     In their capacity as a warrantor, and by the conduct described herein, any attempts by Defendants to limit the implied warranties in a manner that would exclude coverage of the defective software and systems is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective the software and supporting systems is null and void.

70.     All jurisdictional prerequisites have been satisfied.

71.     Plaintiff and members of the Class are in privity with Defendants in that they purchased the software from Defendants or Defendants' agents.

72.     As a result of Defendants' breach of implied warranties, Plaintiff and the Nationwide Class members are entitled to revoke their acceptance of the vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. §2310.

### SECOND CLAIM FOR RELIEF

**(On Behalf of the Minnesota Class)**
*(Breach of Implied Warranty, Minn. Stat. § 336.2-314-336.2-315)*

73.     Plaintiff and the Minnesota Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

74.     Plaintiff brings this claim on behalf of himself and the Minnesota Class.

75.     Defeat Device Vehicles are "goods" within the meaning of Minn. Stat. § 336.2-105.

76.     Defendants are "merchant[s]" within the meaning of Minn. Stat. § 336.2-104.

77.     Defendants impliedly warranted to Plaintiff and the Minnesota Class that the Defeat Device Vehicles were "merchantable" within the meaning of Minn. Stat. § 336.2-314.

78.     Minn. Stat. § 336.2-314 states that, to be merchantable, goods must be at least such as:

a.    pass without objection in the trade under the contract description; and

b.    in the case of fungible goods, are of fair average quality within the description; and

c.    are fit for the ordinary purposes for which such goods are used; and

d.    run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

e.    are adequately contained, packaged, and labeled as the agreement may require; and

f.    conform to the promises or affirmations of fact made on the container or label if any.

79.    Defeat Device Vehicles would not pass without objection in the automotive trade because they do not conform in material aspects with federal emission standards, were sold with an illegal defeat device, as described above, and emit pollutants such as NOx in excess of EPA-compliant levels.

80.    Defeat Device Vehicles are not fit for the ordinary purpose for which such goods are used because they do not conform in material aspects with federal emission standards, were sold with an illegal defeat device, as described above, and emit pollutants such as NOx in excess of EPA-compliant levels.

81.    Defeat Device Vehicles are not adequately labeled because the labeling misrepresents that the vehicles are compliant with federal emissions standards or fails to disclose such noncompliance.

82.    Defendants' conduct deprived Plaintiff and the proposed Minnesota Class of the benefit of their bargain and have caused Defeat Device Vehicles to be worth less than what Plaintiff and other proposed Minnesota Class members paid.

83.    As a direct and proximate result of Defendants' breach of their duties, proposed Minnesota Class members received goods whose condition substantially impairs their value. Plaintiff and the proposed Minnesota Class have been damaged by the diminished value of the vehicles, the vehicles' malfunctioning, and actual and potential increased maintenance and repair costs.

84.     Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

### THIRD CLAIM FOR RELIEF:

**(On Behalf of the Minnesota Class)**
***(Violations of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69)***

85.     Plaintiff and the Minnesota Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

86.     Plaintiff brings this claim on behalf of himself and the Minnesota Class.

87.     Minn. Stat. § 325F.69, subdivision 1 (2008) provides:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

88.     Defendants' business practices, in advertising, marketing and selling the Defeat Device Vehicles while intentionally concealing and suppressing the material fact that they had installed an illegal defeat device in those vehicles to either bypass or render inoperative elements of the vehicle design related to compliance with federal law, such that those vehicles emit NOx in excess of EPA-compliant levels, constitute the use of fraud, false promises, misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. § 325F.69 (2008).

89.     Defendants' business practices, in advertising, marketing and selling Defeat Device Vehicles while concealing that the vehicles, if brought into compliance with federal emission standards, would exhibit diminished performance and fuel economy, as compared to the performance and fuel economy promised by Defendants through their advertising and marketing, constitute multiple, separate violations of Minn. Stat. § 325F.69 (2008).

90.     In connection with the advertising, marketing and sale of the Defeat Device Vehicles, Defendants made the material misrepresentations and omissions set forth in this Complaint in their

advertising, including webpages, press releases, television commercials and other promotional materials disseminated by or on behalf of Defendants in Minnesota.

91.    Defendants' misrepresentations and omissions set forth in this Complaint are material in that they relate to information that would naturally affect the purchasing decisions or conduct of consumers, including Plaintiff and members of the Class, regarding Defendants' products.

92.    As a result of Defendants' unlawful conduct, Plaintiff and members of the Class were injured and suffered damages.  Plaintiff and members of the Class are entitled to recover their actual damages, and costs and disbursements, including costs of investigation and reasonable attorneys' fees, as well as injunctive relief and other equitable relief, including restitution, as determined by the Court, pursuant to Minnesota law, including Minn. Stat. §§ 8.31, subd. 1 and 3a and 325F.69 (2008).

## FOURTH CLAIM FOR RELIEF:

### (On Behalf of the Minnesota Class)
*(Violation of the Minnesota False Advertising Act, Minn. Stat. § 325F.67)*

93.    Plaintiff and the Minnesota Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

94.    Plaintiff brings this claim on behalf of himself and the Minnesota Class.

95.    Minn. Stat. § 325F.67 (2008) provides, in part, as follows:

> Any person, firm, corporation, or association who, with intent to sell or in anywise dispose of merchandise, securities, service, or anything offered by such person, firm, corporation, or association, directly or indirectly, to the public, for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto, or any interest therein, makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, or in any other way, an advertisement of any sort regarding merchandise, securities, service, or anything so offered to the public, for use, consumption, purchase, or sale, which advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such.

96.     Defendants' advertisements for the Defeat Device Vehicles contain assertions, representations or statements of fact which were false or misleading, including that these were "clean" vehicles that complied with federal emissions standards when, in fact, they do not conform in material aspects with federal emission standards, were sold with an illegal defeat device, as described above, and emit pollutants such as NOx in excess of EPA-compliant levels.

97.     Defendants' misrepresentations and omissions concerning the Defeat Device Vehicles' emissions compliance, their performance, and their fuel efficiency were material and likely to deceive reasonable consumers, such as Plaintiff and the Minnesota Class.

98.     Defendants' conduct of misrepresenting that the Defeat Device Vehicles were "clean" vehicles that complied with federal emissions standards in Defendants' advertising, including television commercials, websites, press releases, owner's manuals, and other promotional materials disseminated by or on behalf of Defendants in Minnesota, constitutes multiple, separate violations of Minn. Stat. § 325F.67 (2008).

99.     As a result of Defendants' unlawful conduct, Plaintiff and members of the Class were injured and suffered damages.  Plaintiff and members of the Class seek to recover their actual damages, costs and disbursements, including costs of investigation and reasonable attorneys' fees, as well as injunctive relief and other equitable relief, including restitution, as determined by the Court, pursuant to Minnesota law, including Minn. Stat. §§ 8.31, subd. 1 and 3a and 325F.67 (2008).\

### FIFTH CLAIM FOR RELIEF

**(On Behalf of the Minnesota Class)**
***(Violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44)***

100.     Plaintiff and the Minnesota Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

101.     Plaintiff brings this claim on behalf of himself and the Minnesota Class.

102.     Minn. Stat. § 325D.44, subdivision 1 (2008) provides, in part, as follows:

Subdivision 1.  A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:
…

(5)    represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have. . . .;

(7)    represents that goods…are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;  [. . . . or]

(13)    engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

103.    Defendants' business practices, in advertising, marketing and selling Defeat Device Vehicles by misrepresenting that these were "clean" vehicles that complied with federal emission standards when, in fact, they do not conform in material aspects with federal emission standards, were sold with an illegal defeat device, as described above, and emit pollutants such as NOx in excess of EPA-compliant levels, constitute multiple, separate violations of Minn. Stat. § 325D.44, subd. 1(5), (7), and (13) (2008), including:

a.    Falsely representing that Defendants' Defeat Device Vehicles have characteristics, uses, benefits or quantities of producing emissions in levels that are compliant with EPA standards, when, in fact, they do not;

b.    Falsely representing that Defendants' Defeat Device Vehicles are of a particular standard, quality or grade in producing emissions in levels that are compliant with EPA standards, when, in fact, they are not and do not;

c.    Creating the likelihood of confusion or of misunderstanding among consumers that Defendants' Defeat Device Vehicles produce emissions in levels that are compliant with EPA standards, when, in fact, they do not.

## X.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class respectfully requests that the Court enter judgment in their favor and against Defendants, as follows:

A.    Certification of the proposed Class, including appointment of Plaintiff's counsel as Class Counsel for the Class;

B.    An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.      Injunctive relief in the form of a recall or free replacement program;

D.      Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

E.      Revocation of acceptance;

F.      Damages under the Magnuson-Moss Warranty Act;

G.      For treble and/or punitive damages as permitted by applicable laws;

H.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

I.      An award of costs and attorneys' fees; and

J.      Such other or further relief as may be appropriate.

## XI.     DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all the claims asserted in this complaint so triable.


Dated: February 28, 2017                    Joseph R. Saveri (State Bar No. 130064)
                                            JOSEPH SAVERI LAW FIRM, INC.
                                            555 Montgomery, Suite 1200
                                            San Francisco, CA 94111
                                            Telephone: (415) 500-6800
                                            Facsimile: (415) 395-9940
                                            Email:  jsaveri@saverilawfirm.com


                                            By:     _/s/ Joseph R. Saveri_
                                                        Joseph R. Saveri

                                            Vincent J. Esades
                                            James W. Anderson
                                            HEINS MILLS & OLSON, P.L.C.
                                            310 Clifton Avenue
                                            Minneapolis, MN 55403
                                            Telephone: (612) 338-4605
                                            Facsimile: (612) 338-4692
                                            Email:  vesades@heinsmills.com
                                                        janderson@heinsmills.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jason S. Hartley (State Bar No. 192514)
Jason Lindner (State Bar No. 211451)
STUEVE SIEGEL HANSON, LLP
550 West C Street, Suite 1750
San Diego, CA 92101
Telephone: (619) 400-5822
Facsimile: (619) 400-5832
Email:  hartley@stuevesiegel.com
        lindner@stuevesiegel.com

Patrick R. Burns
BURNS LAW FIRM PLLC
1624 Harmon Place, Suite 300
Minneapolis, MN 55403
Telephone: (612) 877-6400
Email:  patrick@burns-law.mn


*Attorneys for Plaintiff and the Proposed Class*